Tommy EVANS and Caleen
Evans, Appellants,

v.

A. C. FINA, d/b/a Fina Building
Company, Appellee.

No. 50573.

Court of Appeals of Oklahoma,
Division No. 2.

March 14, 1978.

Arney & Millspaugh, Weatherford, for appellants.

Bill Moore, Atoka, for appellee.

BRIGHTMIRE, Judge.

The radix of this appeal is the trial court's constructing of a lease agreement. The lessees brought this lawsuit to enjoin lessors from "attempting to evict" them from part of the land referred to in the lease. They lost and the reason they did, they say, is mainly because the trial judge rejected their motion for summary judgment as a result of misunderstanding the lease. We affirm.

I

In June 1973 appellants became the assignees of a lease indenture between appellee A. C. Fina and Michael D. Gordon. Critical to resolving the issue presented is the habendum clause of the subject lease. It reads:

"Lessor agrees to construct a metal type store building according to the plans and specifications contained on the attached plans and specification sheet, marked 'Exhibit A', and made a part hereof, to be located on the hereinafter described property, and upon completion of the building, Lessor, for and in consideration of the rents, covenants, and agreements hereinafter contained, does, and by these presents, demise, lease, let and rent, for the primary period of one hundred and twenty (120) months, commencing on the date of notice of completion on the above described building is ready for occupancy and ending ten (10) years thereafter, to Lessee, the commercial building located on the following described property on which the building is to be constructed, within the City of Atoka, Atoka County, State of Oklahoma, to-wit:

"The South 60 feet of Lot 5, All of Lot 6, and the North 35 feet of Lot 7, all in Block 4 of NELSON'S BLUFF VIEW ADDITION to the City of Atoka, according to the recorded plat thereof."

Fina built the building and in June 1972 Gordon began operating a Sears catalog facility in it paying $233 a month rent. A year later appellants, with the consent of Fina, bought the operation from Gordon and took over the catalog sales business.

Some five months later, says Tommy Evans in his brief, he "decided to move his small trailer, ten feet by forty feet (10' × 40') to a spot adjacent to the [existing] Sears store and on the same" land described in the lease and in it headquarter his plumbing contracting business. Before doing so, however, he asked Fina if it would be alright and the lessor said it would be if Evans paid $40 a month rent for the parking privilege. Evans agreed to do so, moved the trailer onto the property and

paid the monthly rental until August 1974. Fina waited a while and then, when the Evanses continued to pay no rent, served notice on them to vacate that portion of the premises described in the lease upon which was located the mobile office. Evans (and his wife) reacted by filing this lawsuit to enjoin the ouster on the ground that their lease covered all the land described in it and they therefore had a right to park the trailer on any part of it for the same rent they were paying for use of the Sears building. Fina filed an answer in which he denied Evans' allegations, set up the oral agreement regarding the trailer, and filed a cross-petition seeking removal of the trailer and a judgment for all the unpaid $40 monthly rental accrued during the parkage.

Lessees moved for a summary judgment on the ground no material question of fact existed and that under the unambiguous terms of the lease they were entitled to a pretrial judgment both on their petition and on Fina's cross-petition. The trial judge overruled the motion, held a hearing, denied relief to the Evanses, granted Fina judgment on his cross-petition for $1,232.52 back rent, and ordered the lessees to remove their trailer from subject premises within 20 days.

## II

The Evanses say on the one hand that under the lease they clearly have a right to possession of all the realty described in it for the rent initially established. Fina, on the other hand, insists lessees' possessory rights extend only to the building and enough adjacent land necessary for the operation of the Sears Catalog store because the habendum clause specifies that only "the commercial building" is being rented to them.

There is, to be sure, something to be said for each of these positions. We think, however, both parties overlook a third aspect of the lease agreement which when considered along with the habendum clause sheds strong light on the contractual intent and effects a reconciliation between the two seemingly contrary views as well as providing justification for the supplemental oral mobile home agreement. The provision we have in mind is the rental clause. It is structured in such a way as to create a constructional interdependence between it and the habendum clause. It reads:

"The Lessee, for and in consideration of the use and possession of said premises for said period, does hereby agree to pay unto the Lessor the sum of one per cent (1%) of the total cost of the building and the real estate on which the building is constructed per month, the amount of which shall be determined upon completion of occupancy by Lessee. The first and last of said lease payments shall be paid in advance by Lessee at the time Lessee receives notice from Lessor that the premises are ready for occupancy. Thereafter all rental payments based on one per cent (1%) of the total cost of the improvements and real estate shall be payable on the 15th day of each month thereafter during the entire term of this lease, said sums shall be paid to Lessor at his address at 112 North Pennsylvania, Atoka, Oklahoma, or such other address as Lessor may direct."

It can be seen that because the monthly rental rate is a percentage of the "cost of the building and the real estate," its quantum determination requires reference to information dehors the lease and to the habendum for a calculational formula. When these two clauses are read together the compelling conclusion is that the tract and its improvement were leased as a single unit. The contracting parties contemplated a rental payment equal to one percent of the cost of all the land and all the improvements on it. The language of the lease makes it obvious no land use was contemplated to begin with other than that connected with the one commercial building Fina was to build. According to the evidence the initial rental rate was based on land acquisition (approximately 200' × 143') cost of about $5,000 and construction (along with incidental improvements such as grading, filling and graveling parking areas) cost of around $18,300 or a total cost of $23,300 one percent of which is $233.

There is nothing in the lease which prevents the parties from agreeing to lessor's building a new structure or enlarging the existing one for the use of lessees. If he does the monthly rental rate will be one percent of the costs. The lease does not, however, deal with or contemplate the use of mobile structures on the land at all. Doubtless it was for this reason lessees sought permission from the lessor to park their mobile home on the land. The oral agreement reached was in keeping with the spirit, if not the letter, of the lease provisions. And, after all, the practical construction placed on the lease by the parties in entering into the collateral mobile home agreement is entitled to considerable weight in resolving a rather difficult question.

The result reached by the trial court, we hold, is correct and his judgment is therefore affirmed.

NEPTUNE, P. J., and BACON, J., concur.